UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE CRUISING CO., ETC., INC., <br><br> Plaintiff, <br><br> v. <br><br> MAHNKEN ENTERPRISES, INC., et al., <br><br> Defendants. | No. C05-632P <br><br><br> ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |

This matter comes before the Court on Plaintiff's Motion for a Preliminary Injunction. (Dkt. No. 2). Plaintiff Cruising Co. filed a complaint alleging that Defendants Rebekah and Christopher Mahnken ("the Mahnkens") and their company Mahnken Enterprises, Inc.("MEI") are "cybersquatting" on Plaintiff's web domains. Plaintiff is a travel services provider and argues that this "cybersquatting" constitutes trademark and copyright infringement, among other listed offenses. Having considered Plaintiff's Motion, as well as all other papers and pleadings relevant to this matter, the Court DENIES Plaintiff's Motion for a Preliminary Injunction.

BACKGROUND

In 1998 Rebekah ("Beci") Mahnken contacted Jami Sales, proprietor of Cruising Co., Etc.("the company"), because she was interested in developing a career in the travel industry. (Sales Decl. at ¶ 5). Soon after, Ms. Mahnken signed an independent contractor ("IC") agreement with Ms. Sales and started work in conjunction with Cruising Co. Under the terms of this agreement, each independent contractor associated with Cruising Co. is a "self-employed business person," who has

ORDER - 1

control over her own hours and work location. (Mahnken Decl., Ex. A). Because the independent contractors are self-employed, they do not earn vacation or sick pay from Cruising Co., nor are they covered by health insurance from the company. (Id.) Independent contractors are responsible for their own costs of operation and are permitted to work in conjunction with other travel agencies. (Id.).

At the time that Ms. Mahnken became affiliated with Cruising Co., the company did not have a website. (Mahnken Decl. at ¶3). Both Plaintiff and Defendant state that Ms. Mahnken originally came up with the idea to create a website for the company, from which she and other ICs could gather leads of potential clients interested in vacation travel. (Sales Decl. at ¶5; Mahnken Decl. at ¶3). The URL for this site is www.cruisingco.com. Plaintiff alleges that Ms. Sales provided most of the content for the site, while Defendants allege that the site content was created and controlled by the Mahnkens. (Sales Decl. at ¶6; Mahnken Decl. at ¶4). Both parties agree that the website was very successful, garnering awards and boosting Cruising Co.'s profits. The company launched another website on March 24, 2001. The web domain for this site is www.mouseearsvacations.com. As denoted by the name, this site catered to prospective travelers seeking Disney vacations. Both Plaintiff and Defendant claim credit for the idea to create this site, as well as ownership of its content. (Sales Decl. at ¶¶11-15; Mahnken Decl. at ¶¶7-10). As with www.cruisingco.com, the new site was a success and enhanced the company's profit margin. Both of these sites were registered in the name of Rebekah Mahnken and her husband Chris, who maintained and updated them. (Sales Decl. ¶12).

On September 19, 2001, Ms. Sales and Ms. Mahnken executed a Stock Acquisition Agreement, whereby Ms. Mahnken was to gradually acquire stock in Cruising Co. through "sweat equity." Under this plan, Ms. Mahnken was scheduled to own 90% of the stock of the company by September, 2005, at which time she would be given the opportunity to buy Ms. Sales' remaining 10% of the shares for $5,000. (Mahnken Decl., Ex. F). Under this agreement, Ms. Mahnken became an employee in regard to her new administrative and supervisory roles in the company. Nonetheless, she retained her IC status for the purpose of travel sales. Ms. Sales claimed that Ms. Mahnken did not

ORDER - 2

live up to her work obligations under this agreement and terminated Ms. Mahnken on March 16, 2005. (Sales Decl., Ex. C). Ms. Sales claims that this termination ended all affiliation Ms. Mahnken had with Cruising Co., while Ms. Mahnken claims that her termination as an employee of Cruising Co. does not affect her status as an IC. (Sales Decl. at ¶18; Mahnken Decl. at ¶27).

Since the time of Ms. Mahnken's termination, the parties have been in dispute about who may rightfully control the websites. Plaintiff claims that the Mahnkens have unlawfully retained control of the sites and are preventing Plaintiff from communicating with its customers. Defendants, on the other hand, state that they continued to maintain the websites on behalf of the company until April 17, 2005, when control of the websites was transferred to Ms. Sales. Before this date, Ms. Mahnken insists that she forwarded every lead that came into the websites to Ms. Sales. (Mahnken Decl. at ¶¶23-25). Plaintiff asks for a preliminary injunction against Defendants in order to prevent any further damage to Cruising Co.'s business.

## ANALYSIS

### I.  Preliminary Injunction Standard

In the Ninth Circuit, a Court may grant a preliminary injunction if the moving party shows "either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party." Stuhlbarg Intl. Sales Co. Inc. v John D. Brush and Co., Inc., 240 F. 3d 832, 839-40 (9th Cir. 2001). The primary focus of this analysis, however, is on the probability of success on the merits, as irreparable injury is presumed once a plaintiff has established that it is likely to succeed on the merits in either a trademark case or in a copyright case. See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 n.5 (9th Cir. 2000); Cadence Design Systems, Inc. v. Avant! Corp., 125 F. 3d 824, 827 (9th Cir. 1997). Here, the Court must deny Plaintiff's Motion for a Preliminary Injunction because it has failed to show a likelihood of success on the merits regarding the threshold issues of ownership and control of the trademarks and copyrights in question.

### II.  Ownership

ORDER - 3

To prevail on a preliminary injunction for alleged trademark infringement, Cruising Co. must show that there is a "likelihood of confusion" stemming from the Mahnkens' use of marks that are confusingly similar to those used by Cruising Co. GoTo.com, Inc., 202 F. 3d at 1205. In order to show a likelihood of prevailing on the merits of a copyright infringement claim, Cruising Co. must demonstrate that it is likely to prevail on the question of copyright ownership and that the Mahnkens likely copied key elements of Cruising Co's original, copyrighted material. Feist Publications, Inc. v. Rural Telephone Serv. Co., 499 U.S. 340, 361 (1991).

Here, there is no dispute that the marks allegedly being used by Defendants are exactly identical to those which Plaintiff claims are being infringed. Typical trademark and copyright infringement cases involve a dispute between makers of two separate products. This is not a typical case, because there is only one version of each website at issue. Plaintiff is not alleging that Defendant's creation of a separate, but similar, website is diverting customers or leading to public confusion. Nor is Plaintiff alleging that Defendants copied Plaintiff's website. Rather, Plaintiff's argument is that Defendants' alleged wrongful control of the same websites that were formerly under Plaintiff's control is likely to cause confusion or constitutes forbidden copying.

Plaintiff's argument fails for two reasons. First, there is a factual dispute as to who actually controls the websites. While Plaintiff contends that it is unable to access the websites and the leads derived from them, Defendants state that they have forwarded all leads to Plaintiff and that as of April 17, 2005, Plaintiff had taken control of the websites. (Sales Decl. at ¶ 27-28; Mahnken Decl. at ¶ 24). Neither party submitted clear evidence of who, in fact, controls the websites.

Second, even if the Court assumes that Plaintiff's allegation as to Defendants' control of the websites is accurate, it is not clear that such control is wrongful. First, the websites are registered in Defendants' names. Plaintiff asserts that the Mahnkens were not authorized to register the sites in their names, and that Cruising Co. is the rightful owner of those sites because it paid for them. The evidence Plaintiff provides regarding Ms. Sales' payment for the websites is inadequate. Many of the bank records submitted contain no identifying information as to the owner of the account. (Pl's Ex.

ORDER - 4

B at pp. 3, 3a, 4, 5, 8, 12, 13, 18, 20). The Court may not simply assume that these records reflect the activity in Ms. Sales' personal or business accounts on the mere basis that the records were in her possession. Indeed, if Ms. Mahnken was paying for the web services, as she alleges, her bank records reflecting these payments may have been in the records at Cruising Co. Without better documentation, it is difficult for the Court to discern who was actually paying for the web domain names used by Cruising Co.

Next, even if the websites were paid for wholly with Cruising Co. funds, Defendants' control of those sites may not be wrongful because it is not clear, given the stock acquisition agreement in this case, who the majority stock holder in Cruising Co. is at present. (Defs' Ex. F). Under the arrangement agreed to by Ms. Sales and Ms. Mahnken, Ms. Sales only retained approximately 36% (or $20,000 of the stated $55,000 value of Cruising Co.) of the stock in the company at the end of October, 2004. Clause 11 of the Stock Acquisition Agreement provides: "The termination of employment of a Shareholder, who is employed by the corporation as of the date of this Agreement, shall be deemed an offer by the Shareholder to convey his or her shares (if any) in the corporation for the purchase price as provided in this Agreement." (Id.) However, Plaintiff has provided no evidence that it has accepted Defendant's "offer" under this clause, or that it has paid Ms. Mahnken the approximately $35,000 that her stock is worth under the agreement. If Ms. Mahnken remains the majority shareholder in Cruising Co., it would be hard for this Court to construe her alleged control of the company's websites as wrongful or infringing.

## CONCLUSION

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). Here, the Plaintiff has not carried its burden on the threshold issue of whether it has sufficient control and ownership of Cruising Co. that it may enforce the company's trademark and copy rights. The myriad factual uncertainties in this case recommend that the Court act with caution. The preliminary injunction regarding trademark infringement is DENIED.

ORDER - 5

The Clerk of the Court shall direct a copy of this order be sent to all counsel of record.

Dated: June 6, 2005.

/s/ Marsha J. Pechman
Marsha J. Pechman
United States District Judge

ORDER - 6